J-S44040-23

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| WILLIAM JACKSON | : | |
| | : | |
| Appellant | : | No. 2466 EDA 2022 |

Appeal from the PCRA Order Entered September 7, 2022
In the Court of Common Pleas of Philadelphia County Criminal Division at
No(s): CP-51-CR-0000312-2011

BEFORE: OLSON, J., NICHOLS, J., and COLINS, J.[*]

MEMORANDUM BY COLINS, J.: **FILED AUGUST 29, 2024**

Appellant, William Jackson, appeals from the order dismissing his petition filed pursuant to Post Conviction Relief Act (PCRA), 42 Pa.C.S. § 9541, *et seq.*, in which he asserted, *inter alia*, that he wanted to proffer after-discovered evidence of his innocence. This case now has returned to us following a prior remand for an evidentiary hearing on the after-discovered evidence claim. Due to present counsel's failure to timely file a court-ordered statement pursuant to Pa.R.A.P. 1925(b), we again remand for further proceedings below.

On direct review we adopted the following summary of the facts for this matter:

> The relevant facts of this matter were set forth by the trial court
> as follows:

_____

[*] Retired Senior Judge assigned to the Superior Court.

On March 29, 2007, at approximately 3:30 [a.m.], Vera Spruill (Victim) heard commotion outside of her home at 3937 Wyalusing Avenue in the City and County of Philadelphia. Victim, who was in her bedroom with her infant child went downstairs and opened her front door to see the cause of the commotion. William Jackson (Appellant), Johnny So[b]well[1] (Co-Defendant), and a third man forced themselves through Victim's front door and into her home and threw her to the floor; only Appellant and the third male brandished firearms. All three males searched Victim yelling, "Where the f*ck is the money!?" When Victim responded that she had no money, all three males began to ransack the home. They asked who else was in the home and Victim responded, "Just me and the baby." The third male yelled to Appellant, "We takin['] all this sh*t … take [Victim] to the basement!"

Appellant threw Victim down the basement steps. As Victim was rising to her feet, Appellant forced her back down on her knees. He held the gun to Victim's head and forced her to perform oral sex on him. After a few moments, the other males yelled to Appellant to come back upstairs, and all three exited the house.

Victim ran upstairs to her child and called police, who arrived a short time later. Victim went with police to the district station to file a report.

Trial Court Opinion, 11/4/13, at 2 (footnote omitted).

The record further reflects that Appellant, his co-defendant Johnny Sow[b]ell, and the unidentified man stole many items from Victim's house including a laptop computer and computer bag. However, it was not until three years later that police discovered Victim's property in Johnny Sow[b]ell's residence during an unrelated investigation. Inside Victim's computer bag was a

---

[1] While the trial court spelled the co-defendant's name as Johnny Sowell, we identify him as Sowbell, as he later spelled his name at the evidentiary hearing before the PCRA court. N.T. 5/26/22, 5.

repair ticket bearing Victim's boyfriend's name and handwriting, and a photograph. Appellant was one of the men in the photograph. Victim was called and later identified the computer bag and other items as property that was stolen in 2007. When the police showed Victim the photograph that was found inside the computer bag, she identified one of the men as Appellant, and she stated that Appellant was the one who forced her to perform oral sex at gunpoint. Victim also identified Appellant from a separate photo array.

*Commonwealth v. Jackson*, 2014 WL 10914461, *1 (Pa. Super., filed July 15, 2014) (unpublished memorandum; 1999 EDA 2013) (references to trial notes of testimony omitted).

On July 23, 2012, a jury found Appellant guilty of robbery, rape, conspiracy, and possessing an instrument of crime.[2] On January 18, 2013, the trial court sentenced Appellant to an aggregate term of fifteen to thirty years' imprisonment.[3] He timely filed a post-sentence motion, which was denied by operation of law on May 29, 2013. Appellant then timely filed a notice of appeal. This Court affirmed his judgments of sentence on July 15, 2014, and our Supreme Court denied allowance of appeal on December 26, 2014.[4] *Commonwealth v. Jackson*, 105 A.3d 791 (Pa. Super. 2014) (table), *allocatur denied*, 105 A.3d 735 (Pa. 2014) (table).

_____

[2] *See* 18 Pa.C.S. §§ 3701, 3121, 903, and 907, respectively.

[3] The court sentenced Appellant to consecutive prison term of five to ten years for each of the robbery, rape, and conspiracy convictions, and a concurrent term of one to two years' imprisonment for possessing an instrument of crime.

[4] On direct review, Appellant presented a waived challenge to the weight of the evidence that he characterized as a challenge to the sufficiency of the evidence. *Jackson*, 2014 WL 10914461, at *2.

Appellant filed a *pro se* PCRA petition on December 2, 2015. Counsel was appointed and, on July 31, 2017, filed an amended PCRA petition. In the amended petition, Appellant asserted that his prior counsel was ineffective for not preserving a challenge to the weight of the evidence and that he learned that a man named Marquis Johnson had supposedly committed the crime with co-defendant Sowbell and that he had been mistakenly identified for Johnson. Amended PCRA Petition, 7/31/17, ¶ 12(a)-(b). After the Commonwealth filed a motion to dismiss the petition, the PCRA court issued notice of its intent to dismiss the petition pursuant to Pa.R.Crim.P. 907. Appellant did not respond and, on June 4, 2018, the PCRA court dismissed the petition.

After a timely appeal followed, new counsel was appointed after initial PCRA counsel passed away while the appeal was pending. On March 16, 2021, this Court affirmed in part, and vacated in part. *Commonwealth v. Jackson*, 251 A.3d 1237 (Pa. Super. 2021) (table). As to our disposition, we held that the lower court improperly dismissed the petition as untimely filed. *Commonwealth v. Jackson*, 2021 WL 982759, *2 (Pa. Super., filed Mar. 16, 2021) (unpublished memorandum; 1951 EDA 2018). We remanded for an evidentiary hearing on the after-discovered evidence claim at which time the lower court would assess the credibility of testimony from co-defendant Sowbell. *Id.* at *6. As for the ineffectiveness claim, we determined that because a weight-of-the-evidence claim lacked merit, Appellant could not prevail on a claim that prior counsel should have properly preserved such a claim. *Id.* at *9. We also denied a legality of sentence claim as meritless and

found that Appellant waived a claim for entitlement to a remand because the PCRA court failed to rule on a motion for the appointment of an investigator. *Id.* at *10. As to the ruling on the claim concerning the motion for an appointed investigator, we noted that the claim was rejected without prejudice to Appellant's ability to seek a ruling on that motion upon remand. *Id.*

The PCRA court granted Appellant's subsequent requests for funds for a private investigator. Order, 4/16/21, 1; Order, 5/13/22, 1. On May 26 and June 30, 2022, the court presided over a bifurcated hearing in which the court heard testimony from co-defendant Sowbell, Appellant's aunt (Tabitha Jackson), Victim, and Appellant.[5] The PCRA court summarized the testimony from the hearing as follows:

> [Appellant] first called Mr. Johnny Sow[b]ell, [Appellant]'s Co-Defendant, to the stand. Mr. Sow[b]ell came to know [Appellant] because [Appellant] is a friend of his brother, James King. Moreover, Mr. Sow[b]ell asserted that he became acquainted with [Victim] because he regularly sold narcotics from [Victim]'s house. On the date of the incident, Mr. Sow[b]ell was allegedly there prior to the robbery because he was selling narcotics out of [Victim]'s residence.
>
> Mr. Sow[b]ell alleged that the robbery was staged by [Victim]. Mr. Sow[b]ell recounts that two men came into [Victim]'s home and, while inside of her home, she and the two men got into an argument. [Victim] then gave the persons who robbed her the items that were taken from her premises and started knocking items everywhere "ransacking" her own property. Though the persons who robbed [Victim] took her items, Mr. Sow[b]ell asserts that none of his items were taken. In contrast, when [the]

_____

[5] The judge sitting as the PCRA court, who earlier dismissed Appellant's PCRA petition, was not the same jurist that sat for the 2012 trial and 2013 sentencing.

Commonwealth inquired why [Victim]'s reported stolen items were found in Mr. Sow[b]ell's home, he insisted that he purchased the items found in exchange for drugs for [Victim].

Mr. Sow[b]ell alleges that while the two men were in the property, he was sitting at the table and was able to see their faces. After [Victim] allegedly "ransacked" her own home, the two men left, and Mr. Sow[b]ell was instructed by [Victim] to stay at the property. However, Mr. Sow[b]ell left [Victim]'s home but stood outside of the residence when the police arrived. Mr. Sow[b]ell stressed that he was not involved with the robbery that took place at [Victim]'s residence nor was [Appellant], William Jackson. Mr. Sow[b]ell alleges that the true perpetrators of the robbery are Marquis Johnson and a man named "Dank," who are both allegedly deceased. Based on the testimony Mr. Sow[b]ell gave to this Court, the Court questioned as to whether Mr. Sow[b]ell told his attorney about the alleged conspiracy and whether he filed a PCRA, which Mr. Sow[b]ell answered in the affirmative. Additionally, throughout the evidentiary hearing, Defense counsel makes mention that Mr. Sow[b]ell had a right against self-incrimination, so he did not have to testify at trial. However, Mr. Sow[b]ell stated the reason he did not testify was because he was told by his lawyer that it would not look good because of his criminal background; however, it was Mr. Sow[b]ell's decision not to testify.

Mr. Sow[b]ell stressed that even if he was not subpoenaed by Defense Counsel to appear at the evidentiary hearing, he would have found a way to come to Court to tell the truth since he was at the residence during the incident. Mr. Sow[b]ell maintains that he relayed that information to [Appellant] prior to the conclusion of trial while they both were in the "tank" together.

After the Court heard from Mr. Sow[b]ell, [Appellant] testified and maintained that he never sold drugs with Mr. Sow[b]ell and did not know Mr. Sow[b]ell at the time of the incident. Tabitha Jackson, [Appellant]'s aunt who lives on Wyalusing Avenue, Philadelphia, PA, testified that after [Appellant] was released from incarceration in March 2007, he lived with friends in South Philly, and then moved with her sometime in April 2007. However, [Appellant] maintained that he lived with his grandparents after he was released, moved in a house with friends in South Philadelphia, and then moved in with his aunt during the end of June or the beginning of July in 2007. [Appellant] explained that

he had to move from the residence in South Philadelphia because the landlord was tired of [Appellant] selling drugs in the house after having been arrested twice. However, Ms. Jackson stressed that [Appellant] did not move in with his grandparents after his release from incarceration.

Nevertheless, once Mr. Sow[b]ell and [Appellant] were at trial, [Appellant] was told by Mr. Sow[b]ell that he was going to testify and let the Court know that Appellant was not involved. Additionally, [Appellant] reached out to James King to figure out what was going on and alleged that Mr. King did not want to tell him the truth about the matter because James King's juvenile family member was allegedly involved, and that person has never been charged with a crime. Further, while [Appellant] was in prison, [Appellant] was told by James King that Mr. Sow[b]ell would tell the truth once he finished his sentence.

To gain clarity, the Court questioned [Appellant] about the timeline of him finding out about the supposed robbers of the incident. Thus, [Appellant] stated before he spoke to Mr. Sow[b]ell in 2012, he contacted James King, Mr. Sow[b]ell's brother, in October 2010 and was told that it was someone named "Skeet" that did the robbery. At that time, [Appellant] was not aware that "Skeet" was a street name for Marquis. After [Appellant] found out that information, he alleges that he told his lawyer. [Appellant] then testifies that he and Mr. Sow[b]ell spoke in 2012 and was told that Marquis and "Dank" were the alleged perpetrators. Based on the information given to [Appellant], Mr. Sow[b]ell was going to testify but did not. After the matter ended, and once Mr. Sow[b]ell was released in 2018 or 2019, [Appellant] was notified by James King that Mr. Sow[b]ell was trying to get in contact with [Appellant]'s lawyer. The Court questioned [Appellant], between the years of 2012 to 2019, while he had this information, what did he do with it? [Appellant] claimed that he was trying to figure out the case and get people to come to Court. Additionally, the Court questioned whether he was subpoenaed to appear at the evidentiary hearing; Defense Counsel stated he was not.

The Court inquired that if Johnny [Sowbell] did not commit the crime, why would Mr. Sow[b]ell go down for a crime he did not commit. [Appellant] retorts, "Man, Johnny lying. Come on, man, that's the made up story." The Court then responds, "Right. Johnny is lying right?" [Appellant] responds, "[H]e's lying." The

Court questions if Mr. Sow[b]ell was lying, and he was involved, what makes the testimony that [Appellant] was not involved truthful. [Appellant] maintains that though Mr. Sow[b]ell was lying about the facts surrounding the incident, he was not lying about [Appellant] not being involved. Nevertheless, [Victim] was called to testify, and maintained that [Appellant] is the one who sexually assaulted her.

PCRA Court Opinion, 9/7/22, 3-7 (record citations omitted).

On March 7, 2022, the PCRA court dismissed Appellant's petition and issued a memorandum opinion explaining its reasons for denying the after-discovered evidence claim. Appellant's counsel timely appealed and was granted leave of court to withdraw from representation. Notice of Appeal, 10/4/22; Application to Withdraw as Counsel, 10/5/22; Order Granting Application to Withdraw as Counsel, 10/5/22. Present counsel was subsequently appointed and entered his appearance on November 2, 2022. On November 10, 2022, the PCRA court ordered Appellant to file a concise statement of errors complained of on appeal pursuant to Pa.R.A.P. 1925(b). Rule 1925 Order, 11/10/22. A Rule 1925(b) statement was not filed within the deadline set by the PCRA court's order. Following the transmission of the certified record for this appeal to this Court, Appellant filed a Rule 1925(b) statement on December 18, 2022, which remains *dehors* the record for this appeal.

Appellant presents the following questions for our review:

1. Whether the PCRA court erred by dismissing the PCRA petition without notice to [A]ppellant, thereby precluding the opportunity to raise a claim of ineffective assistance of PCRA counsel in the Court of Common Pleas.

    2.      Whether PCRA counsel's performance was so deficient as to constitute ineffective assistance in violation of [A]ppellant's constitutional right to effective representation on a post-conviction claim.

Appellant's Brief at 8.

Appellant raises an issue concerning the service of the PCRA court's dismissal order and three claims pursuant to ***Commonwealth v. Bradley***, 261 A.3d 381 (Pa. 2021), alleging that his PCRA counsel provided ineffective assistance. In ***Bradley***, our Supreme Court held that "a PCRA petitioner may, after the PCRA court denies relief, and after obtaining new counsel or acting *pro se*, raise claims of PCRA counsel's ineffectiveness **at the first opportunity to do so**, even if on appeal." ***Bradley***, 261 A.3d at 401 (emphasis added). Given the withdrawal of PCRA counsel and the appointment of present counsel in between Appellant's filing of his notice of appeal and the PCRA court's issuance of its Rule 1925 order, the filing of the Rule 1925(b) statement would have been Appellant's first opportunity to raise and preserve his claims alleging that PCRA counsel was ineffective. Here, Appellant's present counsel failed to timely file a Rule 1925(b) statement.

Generally, the failure to file a court-ordered Rule 1925(b) statement results in a waiver of all issues on appeal. ***See*** Pa.R.A.P. 1925(b)(4)(vii) ("Issues not included in the Statement and/or not raised in accordance with the provisions of this paragraph (b)(4) are waived."); ***Commonwealth v. Hill***, 16 A.3d 484, 494 (Pa. 2011) (explaining that Rule 1925(b) is a bright-line rule and any claims not raised in the statement will be waived). At the

same time, "[t]he complete failure to file the [Rule] 1925 concise statement [by counsel] is *per se* ineffectiveness because it is without reasonable basis designed to effectuate the client's interest and waives all issues on appeal." ***Commonwealth v. Thompson***, 39 A.3d 335, 339 (Pa. Super. 2012) (citation omitted). Where the failure to file a Rule 1925(b) statement is the result of an omission by counsel, Rule 1925(c)(3) directs us as follows:

> If an appellant represented by counsel in a criminal case was ordered to file and serve a Statement and either failed to do so, or untimely filed or served a Statement, such that the appellate court is convinced that counsel has been *per se* ineffective, and the trial court did not file an opinion, the appellate court may remand for appointment of new counsel, the filing or service of a Statement *nunc pro tunc*, and the preparation and filing of an opinion by the judge.

Pa.R.A.P. 1925(c)(3).

Pa.R.A.P. 1925(c)(3) treats a counsel's failure to file a timely Rule 1925(b) statement as equivalent with the failure to file any Rule 1925(b) statement. In this instance, the late filing of a Rule 1925(b) statement caused the same result that would have happened if no Rule 1925(b) statement was filed: the PCRA court issued an opinion finding that Appellant waived any issues for appeal by failing to comply with its Rule 1925 order. PCRA Court Opinion, 12/8/22, 1. As counsel's *per se* ineffectiveness with respect to the noncompliance with the Rule 1925 order completely deprived Appellant the opportunity to preserve his claims pursuant to ***Bradley*** and, in turn, deprived the PCRA court of an opportunity to address Appellant's claims on appeal in

any fashion, a remand pursuant to Pa.R.A.P. 1925(c)(3) appears to be the appropriate remedy.[6] *See Commonwealth v. Jabbie*, 200 A.3d 500, 505 (Pa. Super. 2018) ("Where, instead, counsel has filed an untimely Rule 1925(b) statement, our procedure is to remand to allow for preparation of a responsive trial court opinion."); *see, e.g., Commonwealth v. Parrish*, 224 A.3d 682, 696 (Pa. 2020) (PCRA counsel deemed ineffective *per se* by failing to file a timely Rule 1925(b) statement and waiving client's right to appellate review of order denying his PCRA petition).

We remand this matter and direct the trial court to appoint new counsel for Appellant within 21 days of the date that the certified record is returned to the trial court. Upon the appointment of new counsel, the PCRA court should order the newly-appointed counsel to file a Rule 1925(b) statement *nunc pro tunc* where Appellant may preserve his issues for appeal, including his ineffective assistance of counsel claims concerning his former PCRA counsel pursuant to *Bradley*. The PCRA court subsequently must file, within forty-five days of the filing of the Rule 1925(b) statement, a responsive opinion pursuant to Pa.R.A.P. 1925(a). After the PCRA court's certification of its opinion, the Superior Court Prothonotary is directed to establish a new briefing schedule for the parties.

---

[6] While we are addressing present counsel's noncompliance with our Rules of Appellate Procedure, we would also take this opportunity to remind him that the briefs he files with this Court should be double spaced consistent with Pa.R.A.P. 124(a)(3).

Case remanded for further proceedings consistent with this memorandum. Panel jurisdiction retained.